# The Garden City Sand Company v. American Refuse Crematory Company et al.

1. PRACTICE—*Where the Findings of the Master Are Approved by the Chancellor.*—Where the findings of the master, who saw and heard the witnesses, are approved by the chancellor, this court can not disturb the decree rendered thereon, unless it is found clearly and manifestly against the weight of the evidence.

. 2. STOCK—*Recital in Certificate that the Stock is "Fully Paid and Non-assessable."*—The recital in the stock certificates that the stock is fully paid and non-assessable, throws upon the corporation the burden of showing that the stock was taken by the defendant with knowledge that such recital was fraudulent. A *bona fide* purchaser for value and without notice, of stock issued by a corporation as paid up, can not be held liable on such stock in any way, either to the corporation or to the creditors or to other persons, even though the stock was not actually paid up as represented; such a purchaser has a right to rely upon the representations of the corporation that the stock is paid up.

3. SAME—*Right of Purchaser to Rely upon Recitals in Certificate.* —Where a statement is made on the face of the certificate that it is

paid-up stock, the *bona fide* purchaser of the certificate need not inquire further, but may rely upon that representation, and is protected thereby against liability.

**Bill to Enforce a Stock Liability of Stockholders.**—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge presiding. Heard in this court at the March term, 1902. Affirmed. Opinion filed January 8, 1903.

This was a bill filed by appellant to enforce a stock liability of the shareholders of the American Refuse Crematory Company, an insolvent corporation, appellant being a judgment creditor of the crematory company and the appellees being stockholders of the same.

The bill alleges the obtaining of its judgment by appellant, and the return of execution thereon unsatisfied; and that the crematory company permitted that execution to remain unsatisfied more than ten days after demand; that the stock of the crematory company was $1,000,000, divided into 10,000 shares of the face value of $100 each; that none of the stockholders have paid for their respective shares of stock; that said stock was never fully paid for by any person or persons who may have owned the same previous to the time when appellees, stockholders, became owners; and that the appellees, stockholders, are now indebted to the corporation in the sum of the whole or some large part of the face value of the respective shares of stock; that after the incorporation of the crematory company its directors made a pretended sale of 9,998 shares of the company's stock to one F. C. Rutan, and that said Rutan made a pretended payment for said stock by assigning to the company on April 7, 1894, his interest in a United States patent, No. 516,706, issued March 20, 1894, to William L. Johnson, for a certain invention in garbage crematories; that said Rutan had acquired his interest in said patent by a conveyance of that date from Johnson of a license to manufacture and vend said invention in the United States, except Illinois, during the life of the patent; that the conveyance by Johnson names the consideration thereof as $500 in cash and 500 shares of stock of the crematory company; that

344    APPELLATE COURTS OF ILLINOIS.

VOL. 105.] Garden City Sand Co. v. American Refuse Crematory Co.

said shares at that time had no cash value and that the mention of $500 was merely a color of consideration, no consideration in fact actually passing; and that "at the time when the defendant stockholders above named received their shares of stock of said crematory company, said defendants, stockholders, knew of the transaction whereby Rutan obtained an interest in the patent of Johnson, and assigned to defendant company said interest and received from said company the 9,998 shares of the capital stock of the company in consideration for the assignment of said interest in said patent; and that each and all of said defendants, stockholders, had notice and knew the fact to be that said 9,998 shares of the stock were so issued to said Rutan by said company, without actual valuable consideration therefor."

Further, the bill charges that if, in fact, $500 in money was paid by said Rutan to Johnson for said interest, that said sum is the only valuable consideration given by Rutan for the shares of stock issued to him by said corporation, and that the transaction between Rutan and the company was fictitious, was in excess of the real value of the interest in the patent, and a fraudulent over-valuation and a fraudulent overcharge for the purpose of preventing creditors of the corporation from collecting their claims against stockholders, and that "said defendants, stockholders, had such knowledge of the fictitious character of said above described sale by said corporation of said shares of stock to Rutan, or had notice of such facts relating to said transaction, as should have put them upon inquiry as to the good faith of such transaction."

The bill then sets up voluntary assignment proceedings in the matter of the crematory company in the County Court, and the sale of all of its physical assets for $250, which was less than sufficient to pay expenses of administration in the County Court. The bill prays for the ascertainment of the amount due the corporation from the stockholders and that they be decreed to pay the amount of complainant's judgment and the claims of other creditors who should come in.

Garden City Sand Co. v. American Refuse Crematory Co.

The joint and several answer of appellees fully and explicitly denies all of the allegations of the bill, following in its denial the terms of the bill. It also denies that any of appellees, stockholders, is indebted in any amount whatever to the corporation or to any of the corporate creditors, and denies that any of appellees had any knowledge of any fraudulent over-valuation of property received in exchange for stock by the corporation, and denies they ever had any knowledge that the stock was not in fact fully paid and non-assessable, as it purported to be on its face.

The decree of the court finds, among other things, that the stock of the crematory company was subscribed for as follows: Rutan, 9,998 shares; Walker and Bates, one share each; that the individual appellees are now the owners of shares of stock, designating the amount held by them respectively; that with the exception of ten of the defendants (naming them) and the stock held by Krantrowitz as treasurer, there is no evidence that any of the stock held by the other defendants was ever treasury stock; that as to these ten defendants there is no evidence showing how much treasury stock either or any of them held, or the price they were to pay for the same; that all of said stock certificates contained the provision that they were full paid and not assessable; that except as to the said ten defendants there is no evidence showing whether they did or did not pay for their stock; that Rutan, April 7, 1894, assigned his interest in Johnson patent, relating to garbage crematories, to the company, in consideration of the issue to him of 9,998 shares of its stock; that such patent was not then worth to exceed $50,500; that the valuation at which it was assigned was a fraudulent over-valuation; that Rutan should not be allowed credit therefor on his stock subscription for more than $50,500; and that he is still indebted on such stock in the sum of $949,300; that as to all of appellees except Rutan, the bill is dismissed, but as to him the equities are with complainant, and he, Rutan, is ordered to pay the several claims proved.

From such decree appellant perfected this appeal.

EDWIN C. CRAWFORD, attorney for appellant.

GOODRICH, VINCENT & BRADLEY and MAX PAM, attorneys for appellees; ALBERT M. CROSS, of counsel.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

Where the findings of the master, who saw and heard the witnesses, are approved by the chancellor, we can not disturb the decree rendered thereon, unless we find it clearly and manifestly against the weight of the evidence. Hagemann v. Hagemann, 102 Ill. App. 481, and cases cited.

Appellant dealt with the crematory company only when its indebtedness was incurred. Therefore its remedy in the first instance was against the company. When that remedy was found to be insufficient, the right to file the present bill accrued. Whether or not the defendant stockholders are liable thereunder depends upon the allegations of the bill and the proof offered in support thereof.

Appellant alleges that the purchase by Rutan of the 9,998 shares of stock of said company was fraudulent and wholly without consideration; and that the defendants knew or had adequate notice of the fictitious character of such purchase, and therefore knew, or must be held to know, that the stock they received was not fully paid for, and consequently was subject to assessment.

The evidence shows that Rutan subscribed for and there was issued to him all the stock of the crematory company, except two shares. There is no direct evidence that any of his stock went back to the company. The stubs of the certificate book show that all the stock held by the defendants came to them severally from Rutan, and not from the company. The certificates of stock issued to Rutan, and which through him came to the several defendants, stated that the stock was "fully paid and non-assessable." What, if anything, the defendants severally paid Rutan for their stock does not appear in the evidence. Buying the stock, as they did, from him, whether they paid him par, or fifty per cent, or less, for the same, is immaterial, unless it affirmatively appears that they knew, or they had

sufficient notice to impute to them knowledge that Rutan obtained his stock by fraud. It is not asserted that any of the defendants had any direct knowledge of the manner in which Rutan paid for his stock. It is, however, claimed that the books and records of the company showed the character of that purchase and payment, and that the defendants are bound by whatever such books contain in that regard. There is no proof that any of the defendants had actual knowledge of the entries in the books of the company, or that any of them authorized such entries or caused them to be made. Indeed, the fact that they severally bought their stock from Rutan tends to negative such a presumption. The question then arises, does the mere fact that the defendants are stockholders in the company charge them with knowledge of such entries. It will not be contended that appellant stands in a better position as to the adversary use of these entries than would the company, were it here attempting to enforce a liability on such stock as against the defendants. Rudd v. Robinson, 126 N. Y. 113.

But if the theory of appellant is to be regarded as the true one, the books, while they show that Rutan's stock was paid for by the assignment of the patent, do not show that such patent was over-valued. So that one without knowledge of the circumstances, by the reading of that entry in such books, would not be informed, nor would he have notice of the perpetration of any fraud in that particular.

The recital in the stock certificates that the stock was "fully paid and non-assessable," throws upon appellant the burden of showing that the stock was taken by the appellees with knowledge that such recital was fraudulent.

"A *bona fide* purchaser for value and without notice, of stock issued by a corporation as paid up, can not be held liable on such stock in any way, either to the corporation, corporate creditors or to other persons, even though the stock was not actually paid up as represented; such a purchaser has a right to rely upon the representations of the corporation that the stock is paid up. * * * Where,

however, a statement is made on the face of the certificate that it is paid-up stock, the *bona fide* purchaser of the certificate need not inquire further, but may rely upon that representation, and is protected thereby against liability." Cook on Stockholders, Sec. 50.

"A purchaser or assignee of stock which has not been fully paid, does not become liable to the corporate creditors for the unpaid balance where stock has been issued as fully paid, and he has acquired the same in good faith and without notice that it has not been fully paid." Coleman v. Howe,154 Ill. 458.

Appellant says that the bill alleges appellees paid nothing for their stock, and that as the answer does not deny the same, the allegation stands admitted. Even if this be true, which it is not, it can not benefit appellant until it is re-enforced by evidence showing that appellees purchased their stock from the crematory company. Upon this last point the finding of the master is adverse to appellant, and we can not say that such finding is clearly and manifestly against the weight of the evidence.

The defect in the evidence presented by appellant is its indefiniteness. It shows that ten of the defendants each paid money into the treasury of the crematory company, but there is no showing as to how much, if any, of their respective holdings of stock were treasury stock, or upon what price or terms it was sold to them, or that they severally did not pay in full for all the treasury stock which they received. Nor does it appear, except by inference and upon presumption, that the crematory company ever had any treasury stock, while there is evidence tending to support the finding of the master that the company was never the owner of any stock.

The master found, and the court below, by its decree, approved the finding, that none of the appellees, other than Rutan, knew there was any fraudulent over-valuation of the patent, and that they had no knowledge (barring Rutan) when they took their stock, that the same was not fully paid and non-assessable.

We think that such finding is justified by the evidence, and we therefore affirm the decree of the Superior Court.